[Civ. No. 8617.   Fourth Dist., Div. Two.   May 15, 1967.]

Estate   of CHRISTINA M. ALPERS, Deceased.   MARGA-
RETE NIQUETTE, Claimant and Appellant, v. WIL-
LIAM A. ALPERS et al., Claimants and Respondents.

Dale H. Heinly, Mize, Larsh, Mize, Hubbard & Baxter and Royal E. Hubbard for Claimant and Appellant.

Robert E. Sease for Claimants and Respondents.

KERRIGAN, J.—Christina M. Alpers died testate on the 5th day of June 1964, and left four adult sons and four adult daughters surviving her, including the litigants herein, William A. Alpers, Carl Alpers, and Margarete Cummings, also known as Margarete Niquette.

The last will and testament of the testatrix was executed on March 28, 1952, and provided, *inter alia,* as follows:

"THIRD: I hereby give, devise and bequeath all of my property, both real, personal and mixed as follows:

"(a) To Maria Burke, Martha Ohland, Elsie Crouch and Margarete Cummings each an undivided one-sixth (1/6) of that certain real property owned by me and located in Sections 19, 30 and 31, of Township 18, Range 4 East, in Butte County, California, which property contains a total of approximately 1,665 acres."

[The remaining ⅓ interest in the Butte County real property was devised to three sons.]

"(c) To Maria Burke, Martha Ohland, Margarete Cummings and Elsie Crouch each an undivided one-fourth (¼) of that certain real property known as 700 North Batavia Street, Orange, California, and more particularly described as:

"4.68 acres in N W¼ of Sec 30 TWP 4R9; Bd S BY RR R/W, E BY BATAVIA ST: County of Orange."

"(j) All the rest and residue of my estate both real, personal, and mixed, I hereby bequeath, share and share alike, to Margarete Cummings, William Alpers, Carl Alpers and Ernest Alpers."

Paragraph Ninth of the decedent's last will and testament contained the following provision:

"NINTH: I declare that heretofore, on or about the 29th day of November, 1951, I deeded to my sons William A. Alpers, Carl Alpers and Ernest Alpers certain real property located in Mona [sic] County, State of California, which property is commonly known as the "Thompson Ranch" and which property is more specifically described in said Deed, which Deed has been recorded with the County Recorder of said County; that my said sons own all of said real property together with all improvements, hereditaments and appurtenances thereto. I further state that my daughter Margarete Cummings claims that she has interest in said real property but the same is not true and she does not have any valid claims of any nature whatsoever to any of said real property or its improvements, hereditaments or appurtenances. It is my express desire that my daughter, Margarete Cummings, forego any and all claims of any nature whatsoever to all of said real property and its improvements, hereditaments and appurtenances. Therefore, unless my said daughter does prior to the expiration of one year from the date of the execution of this will, execute, *voluntarily and without any consideration therefor*, such documents and papers as are necessary to forever release all of said real property and its improvements, hereditaments and appurtenances of and from any and all claims of any nature whatsoever on the part of Margarete Cummings and also executes such documents as are required to make the recorded title of said property free and clear of any claims whatsoever on her part she shall not receive any part of the devise made to her in paragraph THIRD (a) and (c) of this Will, and all of the property devised to her in *paragraph THIRD (a) and (c)* shall go, share and share alike, to Carl

Alpers, Ernest Alpers and William Alpers." [Italics added.]

Prior to the year 1920 the decedent and her husband acquired title to a 200-acre parcel of real property known as the "Thompson Ranch," reference to which is made in paragraph Ninth of the last will and testament of the testatrix. The ranch was traversed by a river, and the improvements on the land consisted of a few cabins. In 1931 the decedent and her spouse leased a portion of the ranch to their daughter, Margarete, and the latter and her then-husband made substantial improvements on the ranch property by constructing several more cabins and other buildings thereon, and eventually a good portion of the acreage was devoted to the operation of a summer resort. The decedent's husband [Margarete's father] died in 1946, and the testatrix became the sole owner of the ranch property. In 1946 Margarete entered into a new lease with her mother, which lease also granted Margarete an option to purchase the ranch. A dispute arose between the mother and daughter with respect to the option agreement, and Margarete filed an action against the mother in the Superior Court of Mono County in which the daughter sought specific performance of the option agreement. A trial ensued and a memorandum decision decreeing specific performance was entered in June 1949 in favor of Margarete and against the mother; however, no judgment was ever filed; thereafter, a motion to dismiss the action was brought by the mother, the mother being represented by Robert E. Sease, who is present counsel for claimants and respondents herein, William A. Alpers and Carl Alpers; Margarete opposed the motion to dismiss and filed a counteraffidavit in opposition to the motion in which she claimed that her mother had promised her a life estate in the ranch if she would dismiss the specific performance action; in September 1951 the mother's motion was granted and the suit was dismissed. Thereafter, on November 29, 1951, as indicated in paragraph Ninth of the will, the mother executed a grant deed conveying the Thompson Ranch to three of her sons, Carl, William and Ernest, which deed was subsequently recorded. A few months later, on March 28, 1952, the mother executed her will, which was prepared by the aforesaid counsel, Robert E. Sease. This will remained in effect until the demise of the testatrix in June 1964. In the latter part of March 1952, the mother, for the first time, advised Margarete that she had deeded the Thompson Ranch to the three sons, and informed Margarete that the boys had promised to treat Margarete "right."

In May 1952 a conference was held at the Thompson Ranch attended by Margarete, her attorney, and William, Carl and Ernest and their ubiquitous counsel, Robert E. Sease. The purpose of the meeting was to determine whether the dispute between the three boys and Margarete relative to Margarete's claims to the ranch could be compromised and settled. Margarete's original demands were rejected, but further efforts to compromise then continued over a period of several months. Finally, on November 12, 1952, a written agreement was executed by the parties whereby the three boys agreed to pay Margarete $10,000 in full satisfaction of her claims to the property. The $10,000 was payable in installments of $1,000 per year, without interest, and a promissory note evidencing the indebtedness was secured by a trust deed on the ranch. The agreement further provided that Margarete would have the right to use a cabin rent-free for a period of one month each year for life; and that the three brothers would pay the sister $3,900-$4,230 cash for certain personal property situated on the ranch which was owned by Margarete. An escrow was consummated at the Bank of America, Bishop, California, wherein Margarete quitclaimed her interest in the ranch to the three brothers, the full purchase price of the personal property was paid, and the note and deed of trust delivered to Margarete. Between the years 1952 and 1966, Margarete actually utilized the cabin without charge on at least six or seven vacations.

After consummation of the agreement, Margarete saw and lived with her mother on frequent occasions, and the mother indicated "that she was satisfied that the boys had treated Margarete fairly." However, Margarete was never informed of, and never had knowledge of, any of the provisions in her mother's will.

During the mother's lifetime, the three sons effected payment in full to Margarete of the $10,000 as provided in the agreement and promissory note secured by the deed of trust.

Following the demise of the testatrix, the executor filed a petition to determine heirship. Carl Alpers and William Alpers filed a statement of claim of interest and urged that Margarete had no interest in the two parcels of real property referred to in paragraph Third (a) and (c) designated in the last will and testament of the mother. Margarete countered by filing a statement of claim of interest and maintained that she had an interest in the two parcels involved.

A full hearing was afforded the parties on the petition and

the respective claims, and the trial court found that inasmuch as Margarete had been paid a *valuable consideration* for the ranch property that it be decreed that Margarete take nothing under paragraph Third (a) and Third (c) of the last will and testament of decedent.

Margarete appeals from the decree and urges that it be reversed on the following grounds: (1) That there was substantial compliance with the intention of the testatrix as stated in paragraph Ninth; (2) that the condition imposed in paragraph Ninth was impossible of fulfillment; and (3) that the condition imposed in paragraph Ninth was not the sole motive for the conditional disposition.

Appellant initially urges that the evidence was sufficient to show substantial compliance with the intention of the testatrix. Section 142 of the Probate Code provides as follows:

"A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect. It is to be deemed performed when the testator's intention has been substantially, though not literally, complied with. Nothing vests until such condition is fulfilled, except where fulfillment is impossible, in which case the disposition vests, unless the condition was the sole motive thereof and the impossibility was unknown to the testator or arose from an unavoidable event subsequent to the execution of the will."

While the law does not favor the creation of conditions precedent which have the effect of defeating the vesting of estates, and conditions in a deed or will should be strictly construed in favor of the vesting of estates (*Coffill* v. *Bach,* 159 Cal.App.2d 163, 167 [323 P.2d 873]; *Buttram* v. *Finley,* 37 Cal.App.2d 459, 464-465 [99 P.2d 1093]), it is likewise fundamental that a testator may dispose of his property on whatever condition he wishes to impose, so long as the condition is not forbidden by law or opposed to public policy. (*Estate of Fuller,* 143 Cal.App.2d 820, 823 [300 P.2d 342].) "A conditional disposition is one which depends upon the occurrence of some uncertain event, by which it is either to take effect or be defeated." (Prob. Code, § 141.) "A condition subsequent is where an estate or interest is so given as to vest immediately, subject only to be divested by some subsequent act or event. A testamentary disposition, when vested, cannot be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose." (Prob. Code, § 143.) "Whether a condition is precedent or subsequent depends upon the intention of the testator as ex-

pressed in the will when read in the light of surrounding circumstances.'' (5 Bowe-Parker: Page on Wills, § 44.4, p. 403.) ''[I]f the language of the will shows that testator intended to create an estate upon condition precedent, effect will be given thereto.'' (5 Bowe-Parker: Page on Wills, *supra*, at p. 404.) Where the condition in a will is specific, and it must be performed before an interest vests, it is a condition precedent. (*Estate of Catlett*, 117 Cal.App.2d 315, 317 [255 P.2d 464]; *Estate of Anderson*, 135 Cal.App.2d 642, 647 [287 P.2d 825]; *Estate of Kincaid*, 174 Cal.App.2d 84, 88 [344 P.2d 85].) ██ Where the conditional nature of the disposition is clear, the appellate court is ''not entitled to revise or rewrite the will on the basis of what might possibly appear . . . to be a more logical testamentary scheme. Nor would it be profitable . . . to speculate as to the reasons which may have motivated the testator in making the gift subject to the condition which he chose to declare.'' (*Estate of Kincaid, supra*.)

██ If the time for performance of the condition is expressly fixed or limited by the will, it tends to show that the condition is precedent rather than subsequent. (5 Bowe-Parker: Page on Wills, *supra*, § 44.4, at p. 405.) Where the time for performance of the condition is limited to one year, it is a condition precedent. (*In re Thompson's Estate*, 304 Pa. 349 [155 A. 925, 926, 76 A.L.R. 1339].) ██ Where a condition precedent upon which property had been devised or bequeathed to a person must be fulfilled within a prescribed time, the gift fails if the condition is not performed as required. (See *Wheeler* v. *Walker* (1817) 2 Conn. 196 [7 Am. Dec. 264]; *Johnson* v. *Warren* (1889) 74 Mich. 491 [42 N.W. 74]; *In re Jacob's Will* (1935) 269 N.Y. 588 [199 N.E. 685]; see also *In re McCourt's Estate* (1923) 276 Pa. 274 [120 A. 130].)

The trial court hearing expressly found that the will was clear and unambiguous; that there was no compliance by appellant with the conditions set forth in paragraph Ninth; that said condition was not substantially fulfilled; and that the fulfillment of said condition was not impossible. These findings were supported by substantial evidence indicating that appellant failed to perform the condition precedent contained in paragraph Ninth. Margarete asserted a claim in the ranch property; the will reflects that the mother regarded the daughter's claim as being invalid. The evidence indicates that the mother not only disputed the appellant's claim in the

resort property, but felt that the environment at the ranch was detrimental to Margarete because of a drinking problem. Paragraph Ninth of the will is clear in providing that appellant was to release any claims she asserted in the resort *"without any consideration"* therefor. Appellant received consideration in the sum of $10,000 for her claim of interest in the Thompson Ranch, and further accepted the annual use of a cabin for a period of one month each year on rent-free basis for life, which cabin had a fair rental value of $75 per week; at the time the settlement was effected, Margarete was 47 years of age and enjoyed a life expectancy of many years. While there is evidence that relations between the mother and daughter were amicable following execution of the will, there is no evidence that Margarete, in effecting a settlement for a substantial consideration, complied with paragraph Ninth.

■ It next becomes necessary to determine whether the condition precedent was impossible of fulfillment because the daughter was unaware of the condition. (See Annotation, Effect of Impossibility of Performance of Condition Precedent to Devise or Bequest, 39 A.L.R.2d 522.) Appellant maintains that because she had no knowledge of the condition, it was "impossible" to render compliance therewith, within the meaning of section 142 of the Probate Code. However, the trial court found that the performance of the condition precedent was not impossible. Section 142 of the Probate Code does not state that lack of knowledge of a condition precedent means the condition is impossible of performance. The lack of knowledge referred to in section 142 of the Probate Code indicates that the "impossibility was unknown to the *testator*. . . ." [Italics added.] (See *Estate of Lawrence,* 17 Cal. 2d 1, 12-13 [108 P.2d 893] ; *Estate of Nathan,* 89 Cal.App.2d 789, 791 [201 P.2d 865].) The section makes no allusion to the *legatee's* knowledge.

Ignorance of the condition of the devise does not excuse forfeiture in case of breach. (See *Brennan* v. *Brennan* (1904) 185 Mass. 560 [71 N.E. 80, 81] ; *Merrill* v. *Wisconsin Female College* (1889) 74 Wis. 415 [43 N.W. 104].) Where a condition precedent in a will provides that the devisee is to release his or her interest in other property, ignorance of the condition does not excuse the default. (*In re Hodges' Legacy* (Eng. 1873) L.R. 16 Eq. 92, 96.)

In *Merrill* v. *Wisconsin Female College, supra,* testatrix gave a certain sum to a specific college, "provided that the trustees have changed the name before my decease to Downer

College, in memory of my husband.'' The court, construing this bequest as one subject to a condition precedent, noted that the trustees were unaware that a legacy would be given the college upon such a condition. In the opinion of the court, the trustees' ignorance of the condition did not render it invalid, because the testatrix ''wanted the trustees to act in the matter as their own sense of justice and propriety might dictate, and in grateful recognition of his generosity. This was doubtless the reason why knowledge of her intended gift was not communicated to the trustees.''

Appellant finally maintains that the condition contained in her mother's will was not the sole motive for the conditional disposition. However, the motive of the testatrix under section 142 of the Probate Code is only material where it is first determined that fulfillment of the condition precedent is impossible. (See Prob. Code, § 142.) We have determined that the condition precedent imposed in the last will and testament herein was possible of performance in that the daughter merely had to waive any claim in and to the ranch within a one-year period without payment of consideration, and thus, the issue of the mother's motive is rendered completely irrelevant.

The decree is affirmed.

McCabe, P. J., and Tamura, J., concurred.